**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

MARCUS ANTONIO PETERSON,

        Petitioner,

v.

                                 Case Nos.: 3:23-cv-823-TJC-PDB
                                          3:21-cr-48-TJC-PDB

UNITED STATES OF AMERICA,

        Respondent.

_____

**<u>ORDER</u>**

Petitioner Marcus Antonio Peterson moves <u>pro se</u> under 28 U.S.C. § 2255 to vacate his conviction and sentence. Civ. Doc. 1.[1] Peterson pleaded guilty to conspiracy to distribute and to possess with intent to distribute controlled substances for which he received a below-guidelines sentence of 95 months.

Peterson now claims that his guilty plea was unknowing and unintelligent because counsel rendered constitutionally ineffective assistance during his plea proceedings. Generally, he claims that counsel should have argued that the substances involved in the offense differed from the controlled substances charged in the indictment, and the substances involved in the

_____

[1] Citations to the record in the criminal case, <u>United States v. Peterson</u>, No. 3:21-cr-48-TJC-PDB, are denoted "Crim. Doc. __." Citations to the record in the civil § 2255 case, No. 3:23-cv-823-TJC-PDB, are denoted "Civ. Doc. __."

offense were not controlled substances that could have supported his conviction. The United States responds in opposition (Civ. Doc. 3), and Peterson replies (Civ. Doc. 4).[2] This case is ripe for review.[3]

## I.    Background

Peterson and eleven others were charged in a superseding indictment with conspiracy to distribute and to possess with intent to distribute controlled substances in violation of 21 U.S.C. § 846. Crim. Doc. 114. The conspiracy "involved a mixture and substance containing a detectable amount of 3,4-methylenedioxy-methamphetamine, or MDMA, a Schedule I controlled substance, and a mixture and substance containing a detectable amount of α-Pyrrolidinopentiophenone, or alpha-PVP, a Schedule I controlled substance." Id. at 2. The superseding indictment specifies that the offense is punishable under § 841(b)(1)(C). Id.

Peterson pleaded guilty without a plea agreement. Crim. Doc. 532 (Transcript of Plea Hearing). At the plea hearing, Peterson agreed that the

---

[2] The Court appointed the Office of the Federal Defender to represent Peterson in this action. Crim. Doc. 527. After review of the record and consultation with Peterson, the Federal Defender declined to file supplemental briefing. Civ. Doc. 6.

[3] Under Rule 8(a) of the Rules Governing Section 2255 Proceedings, the Court determines that an evidentiary hearing is unnecessary. See Aron v. United States, 291 F.3d 708, 714–15 (11th Cir. 2002) (an evidentiary hearing on a § 2255 petition is not required when the petitioner asserts allegations that are affirmatively contradicted by the record or patently frivolous, or if in assuming that the facts he alleges are true, he still would not be entitled to any relief).

following facts, which are contained in the factual basis of the Notice of

Maximum Penalties filed by the United States, are true and correct (Crim. Doc.

262 at 3–4 and Crim. Doc. 532 at 17–18):

> The defendant, MARCUS ANTONIO PETERSON, was a supplier of α-Pyrrolidinopentiophenone, or alpha-PVP, or similar synthetic cathinones, sometimes called "flakka", to the leaders of a drug trafficking organization in Jacksonville. After obtaining the drugs, members of the organization sold them out of a "trap house", which is a term for a residence out of which illegal narcotics are sold.

> On Tuesday, April 6, 2021, the defendant engaged in a conversation by text message with a leader of the organization about his providing one and a half to two kilograms of the drugs the following Thursday. On Thursday, April 8, 2021, the defendant said, in text messages and conversation by phone, that he might not receive the drugs that day but might receive them the next day.

> On Friday, April 9, 2021, the defendant told the leader of the organization that he only had one kilogram of the drugs to sell and later the same day they discussed meeting on Chaffee Road in Jacksonville for the defendant to deliver the drugs. Later that day, a law enforcement officer surveilled the defendant as he traveled from Lake City to Jacksonville on Interstate 10 ("I-10"). Other officers parked near the eastbound I-10 off-ramp to Chaffee Road. Upon approaching the exit ramp, the defendant saw law enforcement vehicles and accelerated past the exit at high speed. Officers attempted to follow the defendant's vehicle but lost sight of it.

> For the period from November 2020 through April 13, 2021, the defendant sold approximately one

> kilogram of alpha-PVP or similar synthetic cathinones to the drug trafficking organization approximately every two weeks. On April 13, 2021, law enforcement agents searched a trap house controlled by the organization and recovered, among other things, 119 baggies of alpha-PVP or a similar synthetic cathinone and two digital scales.

Additionally, Peterson admitted that "[b]eginning in or about November 2020 and continuing until on or about April 13, 2021, in Duval County, in the Middle District of Florida, [he] and at least one other person agree[d] to try to accomplish a shared and unlawful plan to distribute and to possess with intent to distribute alpha-PVP, a Schedule I controlled substance" and that he "kn[e]w the unlawful purpose of the plan and willfully join[ed] in it." Crim. Doc. 262 at 2–3; Crim. Doc. 532 at 19.

The presentence report calculates an advisory guidelines range of 121 to 151 months based on Peterson's total offense level of 29 and his criminal history category of IV. Crim. Doc. 341 at ¶ 130 (Final Presentence Investigation Report). At sentencing, Peterson lodged no objections to the presentence report. Crim. Doc. 533 at 6–7 (Transcript of Sentencing Hearing). Citing Peterson's "relatively circumscribed" role in the conspiracy, among other factors, the district court varied downward from the advisory guidelines range and sentenced him to 95 months. Id. at 46 and 50; Crim. Doc. 355 at 3 (Statement

4

of Reasons). Peterson filed no appeal.[4]

Instead, Peterson timely filed the present § 2255 motion. He claims his guilty plea was unknowing and unintelligent because counsel rendered constitutionally ineffective assistance during the plea proceedings.

## II.   Standards of Review

### A.   28 U.S.C. § 2255

Under 28 U.S.C. § 2255, a person in federal custody may move to vacate, set aside, or correct his sentence. Section 2255 authorizes a district court to grant relief on four grounds: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court lacked jurisdiction to impose the sentence; (3) the sentence exceeds the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255(a). Only jurisdictional claims, constitutional claims, and claims of error that are so fundamental as to cause a complete miscarriage of justice will warrant relief through collateral attack. United States v. Addonizio, 442 U.S. 178, 184-86 (1979); Spencer v. United States, 773 F.3d 1132, 1138 (11th Cir. 2014) (en banc).

A § 2255 movant "bears the burden to prove the claims in his § 2255 motion." Rivers v. United States, 777 F.3d 1306, 1316 (11th Cir. 2015); see also

---

[4] The district court ordered Peterson to file a written declaration that his decision not to appeal was his voluntary choice. Crim. Doc. 373. Peterson's failure to respond to the order was deemed "to be an acknowledgment by [Peterson] that the decision not to pursue an appeal was his . . . informed and voluntary choice." Id.

Beeman v. United States, 871 F.3d 1215, 1221-23 (11th Cir. 2017). If "'the evidence does not clearly explain what happened . . . the party with the burden loses.'" Beeman, 871 F.3d at 1225 (quoting Romine v. Head, 253 F.3d 1349, 1357 (11th Cir. 2001)). A § 2255 movant will not be entitled to relief, or an evidentiary hearing, "when his claims are merely 'conclusory allegations unsupported by specifics' or 'contentions that in the face of the record are wholly incredible.'" Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991) (citation omitted).

## B.    Ineffective Assistance of Counsel

"[A] collateral attack is the preferred vehicle for an ineffective-assistance claim." United States v. Padgett, 917 F.3d 1312, 1318 (11th Cir. 2019). To establish ineffective assistance of counsel, a § 2255 petitioner must show both: (1) that his counsel's performance was constitutionally deficient, and (2) that counsel's deficient performance prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 687 (1984); Martin v. United States, 949 F.3d 662, 667 (11th Cir. 2020). In determining whether counsel was deficient, "[t]he standard for effective assistance of counsel is reasonableness, not perfection." Brewster v. Hetzel, 913 F.3d 1042, 1056 (11th Cir. 2019) (citing Strickland, 466 U.S. at 687). "In the light of the 'strong presumption' that counsel's actions [fell] within the wide range of constitutionally adequate assistance, a movant 'must establish that no competent counsel would have taken the [challenged] action.'" Khan v. United States, 928 F.3d 1264, 1272 (11th Cir. 2019) (quoting Chandler

6

v. United States, 218 F.3d 1305, 1314-15 (11th Cir. 2000) (en banc)). To establish prejudice, the petitioner must show a reasonable likelihood that the result of the proceeding would have been different but for counsel's error. Martin, 949 F.3d at 667 (citing Padilla v. Kentucky, 559 U.S. 356, 366 (2010)).

"In the context of pleas a defendant must show the outcome of the plea process would have been different with competent advice." Lafler v. Cooper, 566 U.S. 156, 163 (2012). The petitioner must show "that there is a reasonable probability that, but for counsel's errors, [the petitioner] would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985).

The Court considers the totality of the evidence in determining whether a petitioner has established deficient performance and prejudice. Strickland, 466 U.S. at 695. However, because both prongs are necessary, "there is no reason for a court . . . to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one." Id. at 697.

## III. Discussion

Peterson lists four grounds for relief: (1) that counsel was ineffective for not arguing that, although Peterson was charged with conspiring to distribute alpha-PVP, the substance involved in the offense (as confirmed by laboratory testing) was a-PiHP, and that counsel was ineffective for not thoroughly

investigating a-PiHP, which was not a listed controlled substance at the time of the offense; (2) that counsel was ineffective for advising Peterson to plead guilty because the indictment charged him with conspiring to distribute alpha-PVP, but laboratory testing showed the substance involved in the offense was a-PiHP, and therefore his guilty plea was unknowing and unintelligent; (3) that he wishes to withdraw his guilty plea because the indictment charged him with conspiring to distribute alpha-PVP, but laboratory testing showed the substance involved in the offense was a-PiHP; and (4) that he neither sold MDMA nor pleaded guilty to conspiring to distribute MDMA.

### A.        Grounds One and Two

Grounds One and Two, although listed separately, can be restated as one claim: that counsel was ineffective during the plea proceedings for not arguing that the crime charged in the indictment involved alpha-PVP, but laboratory tests confirmed that the substance involved in the offense was a-PiHP, which was not a scheduled controlled substance, and therefore, Peterson unknowingly and unintelligently pleaded guilty to an offense of which he is actually innocent. See Doc. 3 at 4 (United States' restatement of Peterson's claims); see also Senter v. United States, 983 F.3d 1291, 1294 (11th Cir. 2020) (restating petitioner's claim in "an effort to get to the root of the problem" and concluding that the district court "correctly identified the claim before it, and its reframing of the claim did not violate Clisby [v. Jones, 960 F.2d 925, 936 (11th Cir. 1992) (en

8

banc)]). In support of his claim, Peterson files Drug Enforcement Administration ("DEA") laboratory reports that confirm that one of the substances seized by law enforcement was a-PiHP. Civ. Doc. 1-1.

Peterson's claim fails because circuit precedent is clear that "§ 841(a)(1), § 846, and § 841(b) do not require the government to prove a defendant's knowledge of a specific drug." United States v. Gray, 94 F.4th 1267, 1270 (11th Cir. 2024). "'Section 841(a)(1) makes it unlawful for any person knowingly or intentionally to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance,'" and § 846 makes it a crime to conspire to violate § 841(a)(1)." Gray, 94 F.4th at 1270 (emphasis in original) (quoting United States v. Colston, 4 F.4th 1179, 1187 (11th Cir. 2021)). "For both [§ 841 and § 846], the same state of mind is necessary: 'the defendant must knowingly possess, and intend to distribute, a controlled substance, but need not know which substance it is.'" Id. at 1270–71 (quoting Colson, 4 F.4th at 1187–88). "Section 841(b), on the other hand, provides the possible penalties for a § 841(a)(1) violation 'based on only the type and quantity of drug involved, not on what the defendant knew." Id. at 1271 (quoting Colston, 4 F.4th at 1188). "That . . . [is] why the indictment need[s] to list the type of substance—by both name and schedule." Id.

"[A]n indictment listing a specific substance simply establishes the type of drug the government must prove at sentencing; it does not change the general

9

knowledge element for § 846 and § 841(a)(1)." Id. "That approach tracks [the circuit court's] instruction that indictments must be read 'as a whole' and given a 'common sense construction' based upon 'practical, not technical, considerations—including the elements of the statutory offense.'" Id. (quoting United States v. Phillips, 4 F.4th 1171, 1176 (11th Cir. 2021)).

Furthermore, the circuit court "specifically rejected [its] contrary decision in United States v. Narog, which had said that because the indictment in that case named a specific type of drug, the government needed to prove the defendant's knowledge of that particular drug to the jury." Id. (citing 372 F.3d 1243, 1246 (11th Cir. 2004). "Narog and 'its demand for a hyper-technical parsing of every indictment,' . . . departed from longstanding precedent and thus [i]s 'not good law.'" Id. (quoting Colston, 4 F.4th at 1188–89).

Here, the superseding indictment charges Peterson with violating § 846, as punishable under § 841(b)(1)(C). Crim. Doc. 113 at 2. It specifies that the § 846 violation "involve[s] . . . MDMA . . . and . . . alpha-PVP," both of which are identified as "Schedule I controlled substance[s]." Id. According to circuit precedent, this language in the superseding indictment "require[s] the government to prove only that [Peterson] knew he possessed a controlled substance, not that he knew he possessed a certain controlled substance." Gray, 94 F.4th at 1271; see also United States v. Achey, 943 F.3d 909, 914 (11th Cir. 2019) ("[F]or a §846 conspiracy charge, the government is ordinarily not

10

required to prove that the defendant conspired to distribute a specific substance but is only required to prove that the defendant conspired to distribute a generic controlled substance."). Furthermore, "[t]he fact that the indictment name[s] a specific substance does not change this general-knowledge requirement." Gray, 94 F.4th at 1271. Indeed, the identification of MDMA and alpha-PVP as the narcotics involved in the conspiracy only "provide[s] an element of an enhanced penalty under § 841(b)—which does not carry a knowledge requirement." Id.

Accordingly, because the United States did not have to prove Peterson's knowledge that the charged conspiracy involved a specific narcotic, any objection by counsel that the narcotics seized by law enforcement differed from the narcotics charged in the superseding indictment would have been meritless and futile. And, counsel is not constitutionally ineffective for failing to raise this meritless claim. See Hollis v. United States, 958 F.3d 1120, 1124 (11th Cir. 2020); Denson v. United States, 804 F.3d 1339, 1342 (11th Cir. 2015) (citing Freeman v. Attorney General, Fla., 536 F.3d 1225, 1233 (11th Cir. 2008)). Similarly, counsel was not ineffective for not thoroughly investigating whether a-PiHP was a listed controlled substance because, again, the United States did not have to prove Peterson's knowledge that the charged conspiracy involved a specific narcotic, and Peterson admitted to conspiring to distribute a controlled substance, generically.

Peterson's claim fails for the additional reason that a-PiHP was, in fact,

11

a scheduled controlled substance at the time of the conspiracy. The United

States acknowledges, a-PiHP "was not specifically listed as a controlled

substance at the time of the conspiracy," (Civ. Doc. 3 at 7); but, it was

nevertheless a scheduled controlled substance because it was a positional

isomer of α-Pyrrolidinopentiophenone (a-PHP), which was specifically listed as

a controlled substance. The United States presents a letter from Terrence L.

Boos, Ph.D., Chief of Drug & Chemical Evaluation Section of the DEA, which

explains that a-PiHP is a positional isomer of a-PHP (Civ. Doc. 3-1 at 1):

> a-PiHP is a schedule I controlled substance under the
> [Controlled Substances Act]. The chemical structure of
> a-PiHP defines it as a positional isomer of alpha-
> pyrrolidinohexanophenone (a-PHP). 21 CFR §
> 1308.11(h) controls a-PHP including its optical,
> positional (positional isomers as defined by 21 CFR §
> 1300.01) and geometric isomers, salts, and salts of
> isomers in schedule I.

Therefore, because a-PiHP is a positional isomer of a-PHP, which was a listed

controlled substance, a-PiHP was also a controlled substance despite not being

specifically listed as one. Accordingly, Peterson cannot show that counsel was

ineffective for not thoroughly investigating the drug seized by law enforcement,

or for failing to argue that the drug was not a controlled substance, because

such investigation and argument would have been futile.

Furthermore, Peterson's claim that he unknowingly pleaded guilty to an

offense of which he is actually innocent is refuted by his sworn statements at

the plea hearing. During the hearing, the magistrate judge explained to Peterson the two elements of the § 846 charge (Crim. Doc. 532 at 12):

> [T]o prove [the § 846] charge, the United States has to prove two different elements; first, the United States has to prove that two or more people in some way agreed to try to accomplish a shared and unlawful plan to distribute or to possess with the intent to distribute controlled substances; and, second, that you knew the unlawful purpose of the plan and willfully joined in it.

Peterson confirmed he understood these elements and had no questions. Id. Next, the United States recited the facts that support the § 846 charge, including the fact that Peterson "was a supplier of . . . alpha-PVP, or similar synthetic cathinones . . . to the leaders of a drug trafficking organization." Id. at 17 (emphasis added). Peterson lodged no objections to any of the facts and confirmed the facts were true. Id. at 17–18. Peterson confirmed that he was "pleading guilty because [he] [is] guilty[.]" Id.

Peterson acknowledged that counsel "explain[ed] the charge" against him and "answer[ed] all of [his] questions[.]" Id. at 12. He further confirmed that he was satisfied with counsel's representation of him and had no complaints about counsel's representation of him. Id. at 20. The magistrate judge found that Peterson was pleading guilty "knowingly, freely, intelligently, and voluntarily, and . . . , that [he] had the advice and counsel of a competent lawyer, with whom [he was] satisfied." Id. at 22. Peterson never objected to this finding.

Finally, at sentencing, Peterson made no attempt to withdraw his guilty

13

plea and neglected to notify the district court during allocution of his dissatisfaction with counsel's representation or his questions regarding the elements of the § 846 offense. In fact, Peterson repeatedly acknowledged his wrongdoing and expressed his remorse: "I was wrong. And I apologize for my choices and bad decisions and wrong action that I chose. . . . I'm apologetic . . . because what I did was wrong." Crim. Doc. 533 at 39.

A defendant's statements at the plea hearing "constitute a formidable barrier in any subsequent collateral proceedings" because "[s]olemn declarations in open court carry a strong presumption of verity." Blackledge v. Allison, 431 U.S. 63, 74 (1977); see also United States v. Medlock, 12 F.3d 185, 187 (11th Cir. 1994) ("There is a strong presumption that the statements under oath a plea colloquy are true."). "[W]hen a defendant makes statements under oath at a plea colloquy, he bears a heavy burden to show his statements were false." United States v. Rogers, 848 F.2d 166, 168 (11th Cir. 1988).

Peterson offers no argument or evidence to disavow his confirmations under oath that he understood the elements the United States must prove for a § 846 offense. He made specific assurances under oath at the plea hearing, and later at the sentencing hearing, that discredit his current claim that he did not understand the charge to which he was pleading guilty or that he unknowingly pleaded guilty to crime of which he is innocent. See Winthrop-Redin, 767 F.3d at 1217 ("The district court is entitled to discredit a defendant's newly-minted

14

story about [his lack of understanding about the charge to which he is pleading guilty] when that story is supported only by the defendant's conclusory statements" and is contradicted by the record of the change-of-plea colloquy.). Importantly, he told the magistrate judge that he understood the United States need only prove that he conspired to distribute a controlled substance, and he admitted all the facts necessary to support the § 846 charge, including that he conspired to distribute a controlled substance. Crim. Doc. 532 at 12 and 17–19. Because his claim is affirmatively contradicted by the record of the plea and sentencing hearings, Peterson has not carried his "heavy burden to show his statements were false." Rogers, 848 F.2d at 168.

Furthermore, Peterson's claim fails because he cannot demonstrate a reasonable probability that, but for counsel's alleged errors, he would not have pleaded guilty and would have insisted on going to trial. See Premo v. Moore, 562 U.S. 115, 129 (2011); Hill, 474 U.S. at 58–59. In his reply, Peterson contends that he "would have insisted on going to trial had counsel not given him bad legal advice that (a-piHp) was a listed drug under federal law[.]" Civ. Doc. 4 at 4. However, he cannot show that "a decision [to proceed to trial] would have been rational under the circumstances." Padilla, 559 U.S. at 372. The United States' evidence against Peterson, as summarized in the factual basis supporting the Notice to which Peterson pleaded guilty, was substantial, and Peterson admitted these facts without objection. Furthermore, he benefitted by

15

pleading guilty because his total offense level was decreased by two levels for his acceptance of responsibility. Crim. Doc. 341 at ¶¶ 59 and 68; see DiMaria v. United States, No. 22-11470, 2025 WL 1067253, at *3 (11th Cir. Apr. 9, 2025) (concluding that the petitioner failed to show it would have been rational to proceed to trial when the "evidence against [him] was significant" and his guilty plea "lessen[ed] . . . his sentencing exposure"); see also Harvey v. United States, 674 F. App'x 865, 869 (11th Cir. 2016) (concluding that the petitioner failed to show it would have been rational to proceed to trial when "the incriminating evidence against [him] was overwhelming"); Diveroli v. United States, 803 F.3d 1258, 1265 (11th Cir. 2015) (concluding the same, when the petitioner "faced overwhelming evidence of guilt and had no valid affirmative defenses"). Given Peterson's admission to facts supporting the § 846 offense, he cannot show a reasonable probability that but for counsel's advice that a-PiHP was a listed controlled substance he would have proceeded to trial.

## B.    Ground Three

In Ground Three, Peterson expresses his desire to withdraw his guilty plea because, as he claims in Grounds One and Two, the substances seized by law enforcement differed from the controlled substances charged in the indictment, and he believes they were not controlled substances that could have supported his conviction.

When granting relief under § 2255, a district court "shall vacate and set

the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255(b). Thus, the statute establishes a two-step process. United States v. Brown, 879 F.3d 1231, 1235 (11th Cir. 2018). "First, the court must 'vacate and set the judgment aside.'" Id. Second, the district court "must choose from among four distinct remedies: (1) discharge the prisoner; (2) resentence the prisoner; (3) grant the prisoner a new trial; or (4) correct the prisoner's sentence." Id.; see also United States v. Cody, 998 F.3d 912, 916 (11th Cir. 2021) (explaining that, after the district court "select[s] one of four remedies[,] . . . the proceeding under section 2255 is over").

Peterson's request to withdraw his guilty plea is not properly before the district court in this § 2255 action. The remedy is not one of the "four distinct remedies" authorized under § 2255(b).[5] Instead, the district court generously construes Peterson's request as a motion to vacate and set aside the criminal judgment, and for the reasons already explained, such motion lacks merit. See Yoseph v. Sec'y, Fla. Dep't of Corr., No. 25-10113, 2025 WL 2366445, at *4 (11th Cir. Aug. 14, 2025) ("'Federal courts have long recognized that they have an obligation to look behind the label of a motion filed by a pro se inmate and determine whether the motion is, in effect, cognizable under a different

---

[5] Peterson filed no motion to withdraw his guilty plea in his criminal action.

17

remedial framework.'") (quoting <u>United States v. Johnson</u>, 915 F.2d 622, 624–25 (11th Cir. 1990)).

### C.    Ground Four

In Ground Four, Peterson claims that "he never sold MDMA nor did he plea[d] guilty to MDMA within his plea agreement." Civ. Doc. 1 at 8. The Court generously construes this claim, which lacks any elaboration or support, as a claim that Peterson was convicted of, and sentenced for, an offense to which he did not plead guilty. <u>See</u> <u>Winthrop-Redin</u>, 767 F.3d at 1215 ("We liberally construe <u>pro</u> <u>se</u> filings, including <u>pro</u> <u>se</u> applications for relief pursuant to § 2255."); <u>see also</u> <u>Tannenbaum v. United States</u>, 148 F.3d 1262, 1263 (11th Cir. 1998).

Because Peterson neglected to raise this claim on direct appeal, the claim is procedurally defaulted. <u>Bousley v. United States</u>, 523 U.S. 614, 622–24 (1998) (claims that previously were available yet were not raised in a prior proceeding are procedurally defaulted and ordinarily are barred from consideration on collateral review). And, Peterson makes no attempt to demonstrate that cause and prejudice or a miscarriage of justice excuse his procedural default. <u>McCay v. United States</u>, 657 F.3d 1190, 1996 (11th Cir. 2011).

Additionally, the claim is affirmatively contradicted by the record and lacks merit. As explained <u>supra</u>, the superseding indictment charges Peterson with one count of conspiracy to distribute and  to  possess  with  intent  to

18

distribute controlled substances. Crim. Doc. 114 at 2. The conspiracy involved MDMA and alpha-PVP. Id. Peterson did not enter into a plea agreement. Rather, he entered an open guilty plea and, in doing so, admitted that "[he] and at least one other person agree[d] to . . . [an] unlawful plan to distribute and to possess with intent to distribute alpha-PVP, a Schedule I controlled substance[.]" Crim. Doc. 262 at 2–3; Crim. Doc. 532 at 19. The factual basis of the Notice of Maximum Penalties to which Peterson pleaded guilty lacks any reference to MDMA.

Similarly, at sentencing, Peterson was not accountable for conspiring to distribute MDMA. Rather, in calculating Peterson's base offense level, the presentence report notes that the conspiracy "involved a total 12.0 kilogram[s] of [alpha-PVP][,]"[6] which equals 4,560 kilograms of converted drug weight. Crim. Doc. 341 at ¶ 61. Under U.S. Sentencing Guidelines § 2D1.1, because the offense involved between 3,000 and 10,000 kilograms of converted drug weight, Peterson's base offense level was 32. Id. Accordingly, Peterson pleaded guilty to, and was held accountable at sentencing for, conspiring to distribute alpha-PVP—not MDMA. Therefore, because Ground Four is both procedurally defaulted and meritless, Peterson is entitled to no relief.

---

[6] "a-Pyrrolidinopentiophenone, or alpha-PVP, or similar synthetic cathinones such as Eutylone or alpha-PiHP, . . . are sometimes called 'flakka' and are Schedule I controlled substances." Crim. Doc. 341 at ¶ 10, n.1.

### D.      Peterson's Reply

In his reply, Peterson attempts to bring a new claim that is absent from his § 2255 motion. In one sentence, and without any elaboration, Peterson contends that "[t]he government['s] failure to elaborate on the issue that counsel had been ineffective for failure to file an appeal upon his request to do so, therefore shows that the government concedes to that issue as being true." Civ. Doc. 4 at 4.

A district court is required to resolve every claim properly presented in a § 2255 motion. Clisby, 960 F.2d at 936. The district court, however, is not required to address a claim that a party fails to raise until the reply. See United States v. Howard, 28 F.4th 180, 201, n. 6 (11th Cir. 2022) ("Arguments raised for the first time in a reply brief are not properly before a reviewing court.") (quotations and alterations omitted). Furthermore, "[a] habeas petitioner must present a claim in clear and simple language such that the district court may not misunderstand it." Dupree v. Warden, 715 F.3d 1295, 1299 (11th Cir. 2013).

In his § 2255 motion, Peterson lists four grounds for relief as restated supra in Section III. See Senter, 983 F.3d at 1295 ("It may be best practice for a district court to follow a 'show your work' approach by directly restating a movant's claim and then laying out all analytical steps in addressing that claim."). When asked on the standard form to "explain why" he did not raise these four grounds for relief in a direct appeal, Peterson responds, "Counsel

advised me that I have no issues to raise on direct appeal[,]" (Civ. Doc. 1 at 3); "Counsel fail[ed] to raise this issue because Counsel believed . . . that the substance (a-pihp) was a legal drug[,]" (id. at 5 and 8); and "counsel fail[ed] to raise this issue [on] on direct appeal[,]" (id. at 6). Absent from Peterson's motion is any allegation that he requested counsel to file an appeal. Also absent from Peterson's motion is any freestanding or separate claim that counsel was ineffective for not appealing (regardless of whether he asked counsel to appeal). Although the district court generously construes pro se pleadings, "this leniency does not give a court license to serve as de facto counsel for a party, or to rewrite an otherwise deficient pleading in order to sustain an action." Campbell v. Air Jam., Ltd., 760 F.3d 1165, 1168–69 (11th Cir. 2014)).

Accordingly, because Peterson waited until his reply to advance this additional complaint that counsel was ineffective for not appealing after Peterson requested that he do so, the claim is not properly before the district court, and the district court shall not consider it. See Wilson v. United States, No. 16-15133, 2017 WL 3225903, at *1 (11th Cir. Feb. 23, 2017) (citing Herring v. Sec'y, Dep't of Corr., 397 F.3d 1338, 1342 (11th Cir. 2005) ("[T]his claim was not properly raised until [the] reply brief and, therefore, was not properly before the district court.")); see also Prada v. United States, 692 F. App'x 572, 574 (11th Cir. 2017) (affirming the district court's refusal to consider new arguments raised in a reply brief because petitioner "was barred from raising new claims");

21

Enriques v. United States, 416 F. App'x 849, 850 (11th Cir. 2011) ("Although pro se pleadings are construed more liberally than those filed by counsel, . . . issues not argued by a pro se litigant in his initial brief are deemed waived[,] . . . [and] we do not address arguments raised for the first time in a pro se litigant's reply brief."); Snyder v. United States, 263 F. App'x 778, 780 (11th Cir. 2008) (affirming the district court's ruling that a pro se petitioner's reply brief could not be construed as an amendment to add an additional claim to the motion to vacate).

## IV.    Conclusion

Peterson's motion under § 2255 to vacate, set aside, or correct his sentence (Civ. Doc. 1) is **DENIED**. The clerk is directed to enter a judgment against Peterson, terminate any pending motions, close this case, and enter a copy of this order in the criminal case.

### CERTIFICATE OF APPEALABILITY
### AND LEAVE TO APPEAL IN FORMA PAUPERIS

Peterson is not entitled to a certificate of appealability ("COA"). A prisoner moving under § 2255 has no absolute entitlement to appeal a district court's denial of his motion to vacate. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a COA. Section 2253(c)(2) permits issuing a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." To merit a certificate of appealability, Peterson must show that

22

reasonable jurists would find debatable both (1) the merits of the underlying claims and (2) the procedural issues he seeks to raise. *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel,* 529 U.S. 473, 478 (2000); *Eagle v. Linahan,* 279 F.3d 926, 935 (11th Cir 2001). Because he fails to show that reasonable jurists would debate either the merits of the claims or the procedural issues, Peterson is entitled to neither a certificate of appealability nor an appeal in forma pauperis.

A certificate of appealability is **DENIED**. Leave to appeal in forma pauperis is **DENIED**. Moore must obtain permission from the circuit court to appeal in forma pauperis.

**DONE AND ORDERED** at Jacksonville, Florida, this 22nd day of June 2026.



*Timothy J. Corrigan*

TIMOTHY J. CORRIGAN
Senior United States District Judge

TpaP-5
C:    Marcus Antonio Peterson, #45830-509
        Counsel of record

23